UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

DARRIN LaPINE,

                    Plaintiff,                    Case No. 2:10-cv-238

v.                                       Honorable R. Allan Edgar

CHIPPEWA COUNTY
CORRECTIONAL FACILITY et al.,

                    Defendants.

_____/

## OPINION

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*, and Plaintiff has paid the initial partial filing fee. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Darrin LaPine presently is incarcerated at the Chippewa County Correctional Facility (CCCF), which is operated by Chippewa County.  Plaintiff sues the following Defendants: CCCF; Chippewa County; the Chippewa County Sheriff's Department; Doctor (unknown) Grahm; Swanson Services; GTL Phone Systems Co.; Sheriff Robert Savoie; Under-Sheriff Mike Bitnar; Lieutenant Jack Horka; Sergeant Danett Rose; Paul Stanaway; Medical Administrator Rick McBride; Senior Officers Loraine Anderson, Tom Lawlor and Marsha Kibbal; and former Officer Doug Mitchell.

Plaintiff purports to bring this action on behalf of himself and all other CCCF prisoners who are similarly situated.  Plaintiff's form complaint contains only general and conclusory allegations without specifying which, if any, of the allegations involve conduct directed at him personally.  He states that numerous requests were made by unnamed individuals for religious services for prisoners with Native American, Muslim, Buddhist, Catholic, Jewish and Baptist beliefs. Plaintiff also generally alleges that visitation is inadequate and that access to the courts is denied by all staff to unnamed prisoners.  He asserts that all prisoners, excepting INS prisoners, receive insufficient legal counsel and library resources.  He complains that newspapers and publications are not allowed at the jail.  In addition, he complains that the commissary engages in price-fixing and gouging, with kick-backs from Swanson Services.  Similarly, he contends that the phone system operated by Defendant GTL is outrageously expensive, due to kick-backs, price-fixing and gouging. Plaintiff complains that the TV system has insufficient channel selections; that the temperature of the facility is routinely cold; that the ventilation system is inadequate; that inmate cells provide inadequate square footage; that mattresses are ripped, smelly and unsanitary; that the showers are

leaky and moldy; that there is lead paint in the jail that has never been removed; that some toilets and sinks leak; that there are no ladders to access the upper bunks; that all but INS prisoners are issued insufficient clothing changes each week; that medical needs of prisoners are not met; that the classification system is insufficiently uniform; that no activities or programs are provided to inmates; that meals are inadequate; that inmates keep their own cup and spoon, resulting in an inability to have them sanitized; that CCCF has insufficient staff to monitor prisoners; that prisoners who are written up for infractions are provided no copy of the charges and no hearing; that the jail is lit too brightly and is too noisy, and prisoners are made to clean without compensation; and that there exists no grievance procedure.

In an attachment to his complaint entitled "Statement of Facts," Plaintiff states that he has personally been placed in cells that have showers containing black mold.  He states that he has in the past experienced "foot rot" from standing water in the showers that caused the skin to peel off his toes.  (Page ID#12.)  He states that "[e]very cell in the old jail I was in was like this," suggesting that his experience with the condition occurred at a different facility.  In addition, he complains that his mattress is not sanitary and causes him neck and back discomfort.  He claims that he asked an unspecified person for a new mattress, but his request was denied.  He also claims that he is light sensitive and that lights are kept on in some cells 24 hours per day.  In other cells, lights are kept on 18 hours per day.

Plaintiff also alleges that he has been placed in isolation and maximum security by Defendants Anderson, Rose and Horka without written notice of the accusation against him and without a hearing.  He alleges that he asked for access to legal materials, but Defendants Rose and Horka stated that the county prosecutor had informed them that the jail was not required to provide

those materials.  In addition, he claims that he has been subjected to retaliation for filing written complaints and helping others.

In addition, Plaintiff alleges that Defendant Dr. Grahm refused to issue Plaintiff certain unspecified medications that Plaintiff previously had been prescribed.  Plaintiff also claims that he asked to see Defendant Doctor Grahm on one occasion about an unspecified matter, but he was not seen.  Plaintiff next generally states that regular staff pass out the medications and sometimes issue the wrong medications, skip individuals, or fail to refill medications.  Plaintiff claims that Defendant Medical Administrator McBride was written about the practices, but did not change them.  In addition, Plaintiff claims that he would starve if he did not purchase additional food from the commissary, as the three meals at CCCF contain only 500 calories each, with 130 of those calories coming from milk, to which Plaintiff is intolerant.  Plaintiff alleges that dinner routinely consists of a sandwich, a piece of fruit, a piece of cake or cookie, and a drink, and he complains that little variety is offered.  According to Plaintiff, Defendant Graham is responsible for overseeing the prison diet.

Plaintiff next alleges that he is cold at all times and that the ventilation and heating system affect his breathing.  He also alleges that he personally must use a cup and spoon that he cannot sanitize.  Finally, Plaintiff alleges in his attachment to the complaint that he personally asked for a Native American service, but it was denied by an unnamed individual.

Plaintiff seeks declaratory and injunctive relief, together with compensatory damages.

- 4 -

**Discussion**

I.    Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief."  *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by

a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Rights of Others

Plaintiff attempts to make allegations on behalf of all similarly situated prisoners, and he lists seven specific other individuals he intends to include. First, Plaintiff lacks standing to assert the constitutional rights of other prisoners. *Newsom v Norris*, 888 F.2d 371, 381 (6th Cir. 1989); *Raines v. Goedde*, No. 92-3120, 1992 WL 188120, at *2 (6th Cir. Aug. 6, 1992). As a layman, Plaintiff may only represent himself with respect to his individual claims, and may not act on behalf of other prisoners. *See O'Malley v. Brierley*, 477 F.2d 785 (3d Cir. 1973); *Lutz v. LaVelle*, 809 F. Supp. 323, 325 (M.D. Pa. 1991); *Snead v. Kirkland*, 462 F. Supp. 914, 918 (E.D. Pa. 1978). Federal law specifies that cases in the courts of the United States may be conducted only by the parties personally or through counsel. 28 U.S.C. § 1654. That statute provides that, "in all courts of the United States, the parties may plead and conduct *their own cases* personally or by counsel, as, by the rules of such courts, respectively, are permitted to manage and conduct causes therein." 28 U.S.C. § 1654 (emphasis added). The statute clearly makes no provision for a *pro se* party to represent others. The federal courts have long held that section 1654 preserves a party's right to proceed *pro se*, but only with respect to her own claims. Only a licensed attorney may represent other persons. *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201-03 (1993); *Shepherd v. Wellman*, 313 F.3d 963, 970 (6th Cir. 2003); *United States v. 9.19 Acres of Land*, 416 F.2d 1244, 1245 (6th Cir. 1969).

- 6 -

Second, to the extent that Plaintiff intends to bring his complaint as a class action, the Court declines to certify a class.  For a case to proceed as a class action, the Court must be satisfied on a number of grounds, including the adequacy of class representation.  *See* FED. R. CIV. P. 23(a)(4).  It is well established that *pro se* litigants are inappropriate representatives of the interests of others.  *See Garrison v. Mich. Dep't of Corr.*, 333 F. App'x 914, 919 (6th Cir. 2009) (citing *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975)); *see also Dodson v. Wilkinson*, 304 F. App'x 434, 438 (6th Cir. 2008); *Ziegler v. Michigan*, 59 F. App'x 622, 624 (6th Cir. 2003); *Palasty v. Hawk*, 15 F. App'x 197, 200 (6th Cir. 2001).  Accordingly, because Plaintiff is an incarcerated, *pro se* litigant, the Court finds that he is not an appropriate representative of a class.

### B.    Conclusory Allegations

Plaintiff's form complaint is devoid of any specific allegation about what conduct affected him personally or violated his own constitutional rights.  In addition, Plaintiff's form complaint fails to allege that any particular Defendant was responsible for any deprivation suffered by Plaintiff.  Instead, Plaintiff's allegations consist of a laundry list of complaints about the less-than-perfect overall conditions of the jail facility.  Such allegations are wholly inadequate to state a claim. Because Plaintiff cannot raise the claims of others, his failure to allege a personal deprivation renders the body of his form complaint wholly insufficient to state a claim.  *See Twombly*, 550 U.S. at 570 (requiring the complaint to contain "enough facts to state a claim to relief that is plausible on its face").  *Twombly*, 550 U.S. at 570.  The court need not accept "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements . . . ."  *Iqbal*, 129 S. Ct. at 1949.  As a consequence, the allegations set forth in the body of the form complaint are wholly insufficient to state a claim against any Defendant.

In the attachment to the complaint, Plaintiff sets forth limited personal allegations, naming only five Defendants:  McBride, Grahm, Rose, Horka and Anderson.  It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints.  *See Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (dismissing complaint where plaintiff failed to allege how any named defendant was involved in the violation of his rights); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing plaintiff's claims where complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights).  Because Plaintiff's claims fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"), Plaintiff's complaint must be dismissed against all of the Defendants except Defendants McBride, Grahm, Rose, Horka and Anderson.

Plaintiff's claims against Defendants CCCF, the Chippewa County Sheriff's Department, Swanson Services and GTL Phone Systems are also subject to dismissal for various additional reasons.  First, the jail (CCCF) is a building, not an entity capable of being sued in its own right.  In addition, the Chippewa County Sheriff's Department does not exist as a separate legal entity; it is simply an agent of the county.  *Vine v. County of Ingham*, 884 F. Supp. 1153, 1158 (W.D. Mich. 1995) (citing *Hughson v. County of Antrim*, 707 F. Supp. 304, 306 (W.D. Mich. 1988), and

*Bayer v. Almstadt*, 185 N.W.2d 40, 44 (1970)).  Accordingly, Chippewa County Correctional Facility and the Chippewa County Sheriff's Department are not proper parties to the complaint.

Further, Chippewa County may only be liable when its policy or custom causes the injury.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1974).  In a municipal liability claim, the finding of a policy or custom is the initial determination to be made.  *Doe v. Claiborne County*, 103 F.3d 495, 509 (6th Cir. 1996).  The policy or custom must be the moving force behind the constitutional injury, and a plaintiff must identify the policy, connect the policy to the governmental entity and show that the particular injury was incurred because of the execution of that policy. *Turner v. City of Taylor*, 412 F.3d 629, 639 (6th Cir. 2005); *Alkire v. Irving,* 330 F.3d 802, 815 (6th Cir. 2003); *Doe*, 103 F.3d at 508-509.  In matters pertaining to the conditions of the jail and to the operation of the deputies, the sheriff is the policymaker for the county.  MICH. COMP. LAWS § 51.75 (sheriff has the "charge and custody" of the jails in his county); MICH. COMP. LAWS § 51.281 (sheriff prescribes rules and regulations for conduct of prisoners); MICH. COMP. LAWS § 51.70 (sheriff may appoint deputies and revoke appointments at any time); *Kroes v. Smith*, 540 F. Supp. 1295, 1298 (E.D. Mich. 1982) (the sheriff of "a given county is the only official with direct control over the duties, responsibilities, and methods of operation of deputy sheriffs" and thus, the sheriff "establishes the policies and customs described in *Monell*").  Thus, the court looks to the allegations in plaintiff's complaint to determine whether plaintiff has alleged that the sheriff has established a policy or custom which caused plaintiff to be deprived of a constitutional right.

Plaintiff's action fails at this first step because his allegations have not identified a policy or custom.  A "policy" includes a "policy statement, ordinance, regulation, or decision officially adopted and promulgated" by the sheriff.  *Monell*, 436 U.S. at 690.  Plaintiff has not

asserted that there is an official policy.  Indeed, Plaintiff expressly disavows the existence of a policy in numerous places in his complaint.   Instead, he suggest that officials frequently acted in an arbitrary manner and that the jail was without a policy in a variety of areas.

Plaintiff also has not identified a custom.  The Sixth Circuit has explained that a "custom"

> for the purposes of *Monell* liability must be so permanent and well settled as to constitute a custom or usage with the force of law.  In turn, the notion of "law" includes deeply embedded traditional ways of carrying out state policy.  It must reflect a course of action deliberately chosen from among various alternatives.  In short, a "custom" is a "legal institution" not memorialized by written law.

*Doe*, 103 F.3d at 507 (citations and quotations omitted).  Instead, Plaintiff has alleged only that unidentified individuals have complained to Defendant Sheriff Savoie about a variety of matters.  Plaintiff's allegation amounts to a claim that the sheriff was negligent in handling situations that may or may not have affected Plaintiff personally.  Such an allegation fails to show that the sheriff had a custom of failing to act which resulted in the conduct that caused Plaintiff's injuries.  Plaintiff's allegation does not show that the sheriff took "a course of action deliberately chosen from among various alternatives." *Doe*, 103 F.3d at 507.  Morever, mere negligence in failing to take preventive measures is insufficient to show § 1983 liability.  *Molton v. City of Cleveland*, 839 F.2d 240, 246 (6th Cir. 1988).  In other words, allegations that there were negligent acts by the sheriff as the policymaker for Chippewa County, without a showing that the acts were the result of a policy or custom, do not support liability under § 1983.  *Molton*, 839 F.2d at 246.  Thus, Plaintiff has failed to allege that the sheriff, as final policymaker for Chippewa County regarding the conditions of the jail and operations of the deputies, had a policy or custom that caused plaintiff to be deprived of a constitutional right.

In addition, Defendants Swanson Services and GTL Phone Systems Company are private actors, not subject to suit under § 1983.  As previously discussed, to state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West*, 487 U.S. at 48; *Dominguez*, 555 F.3d at 549; *Street*, 102 F.3d at 814.  In order for a private party's conduct to be under color of state law, it must be "fairly attributable to the State." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982); *Street*, 102 F.3d at 814.  There must be "a sufficiently close nexus between the State and the challenged action of [the defendant] so that the action of the latter may be fairly treated as that of the State itself." *Skelton v. Pri-Cor, Inc.*, 963 F.2d 100, 102 (6th Cir. 1991) (citing *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).

Plaintiff has not presented any allegations by which the companies' conduct could be fairly attributed to the State.  In addition, Plaintiff cannot demonstrate that the private companies conspired with any state actor, as Plaintiff has failed entirely to allege unconstitutional conduct by any state actor. *See infra.*  Further, Plaintiff appears to allege that the companies engaged in price-fixing and monopolistic practices, in violation of state and federal law.  A private citizen "lacks a judicially cognizable interest in the prosecution or nonprosecution of another." *Diamond v. Charles*, 476 U.S. 54, 63 (1986).  Simply put, Plaintiff cannot compel a criminal prosecution of Defendants because private citizens, whether or not they are incarcerated, cannot compel a criminal prosecution of another. *See Diamond*, 476 U.S. at 64-65; *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *Martin v. Koljonen*, No. 03-2169, 2004 WL 445720, at *1 (6th Cir. Mar. 9, 2004).  Accordingly, for this additional reason, Plaintiff fails to allege an actionable claim against Defendants Swanson Services and GTL Phone Systems Company.

### C.    Defendants McBride, Grahm, Rose, Horka and Anderson

#### 1.    Defendant McBride

Plaintiff's sole claim against Defendant McBride is that McBride failed to respond to Plaintiff's complaint that non-medical staff should not be permitted to pass out daily medications to prisoners, because, on occasion, officers made errors in the delivery of medication.  Inasmuch as Plaintiff fails to allege that he personally was given the wrong medication, Plaintiff fails to state a claim against Defendant McBride.

Moreover, Plaintiff does not allege that Defendant McBride was personally responsible for delivering incorrect medication.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior.  *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002).  The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act.  *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 129 S. Ct. at 1948.  Plaintiff has failed to allege that Defendant McBride engaged in any active unconstitutional behavior.

#### 2.    Defendants Rose and Horka – Access to the Courts

Plaintiff alleges that he requested access to legal materials, but his requests for court rules, statutes, case law and a computer were all denied by an unknown person.  At some point,

- 12 -

Defendants Horka and Rose advised Plaintiff that the county prosecutor had informed them that CCCF did not need to provide the requested materials.  Plaintiff alleges that he was denied access to the courts.

As previously discussed, Plaintiff fails to identify which Defendant actually denied him access to legal materials.  Even assuming that Horka and Rose are responsible for denying Plaintiff the materials he requested, Plaintiff nonetheless fails to state an access-to-the-courts claim. It is well established that prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977).  The *Bounds* Court held that the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them."  *Id.* at 824-25.

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit.  In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury."  *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop v. Johnson*, 977 F.2d 996, 1000 (6th Cir. 1992); *Ryder v. Ochten*, No. 96-2043, 1997 WL 720482, at *1-2 (6th Cir. Nov. 12, 1997).  In other words, a plaintiff must plead and demonstrate that the shortcomings in the prison legal assistance program or lack of legal materials have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim.  *Lewis*, 518 U.S. at 351-353; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).  Further, the Supreme Court has strictly limited the types of cases for which there may be an actual injury:

- 13 -

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

Here, Plaintiff has alleged only that he requested access to unspecified legal materials and was refused. Plaintiff fails to allege that he was pursuing litigation, much less that he was pursuing the type of litigation protected by the Constitution. Further, Plaintiff fails to allege that he suffered any actual injury to that litigation. For all these reasons, Plaintiff fails to state an access-to-the-courts claim against Defendants Horka and Rose.

- 14 -

3.      Defendants Anderson, Horka and Rose – Due Process and Retaliation

Plaintiff alleges that, on unspecified occasions, Defendants Anderson, Horka and Rose arbitrarily placed him in segregation.  "The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law."  *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005).  To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake.  *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005).  Analysis of a procedural due process claims involves two steps:  "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient."  *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner.  *See Meachum v. Fano*, 427 U.S. 215, 225 (1976).

In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause.  According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his sentence" or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 486-87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).  The *Sandin* Court concluded that mere placement in administrative segregation did not implicate a liberty interest

because the segregation at issue in that case did not impose an atypical and significant hardship. *Sandin*, 515 U.S. at 484; *Wilkinson v. Austin*, 545 U.S. 209, 222-23 (2005).

Generally courts will consider the nature and duration of a stay in segregation in determining whether it imposes an "atypical and significant hardship."  *Harden-Bey*, 524 F.3d at 793.  In *Sandin*, the Supreme Court concluded that disciplinary segregation for thirty days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest."  515 U.S. at 486.  Likewise, the Sixth Circuit often has held that administrative segregation alone does not involve an "atypical and significant" hardship implicating a protected liberty interest.  *See e.g., Jones v. Baker*, 155 F.3d 810, 812-13 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995) (holding a Michigan prisoner's complaint about his placement in administrative segregation without a hearing did not rise to the level of an "atypical and significant hardship").  The Sixth Circuit had held that a prisoner may present a § 1983 claim alleging that placement in administrative segregation is "atypical and significant in relation to the ordinary incidents of prison life" only in extreme circumstances.  *See Harden-Bey*, 524 F.3d at 795.

Here, Plaintiff does not allege that the nature or duration of segregation to which he was subjected was either atypical or significant.  In fact, Plaintiff does not provide any factual information about either the conditions in segregation or the length of any period of segregation. Further, given that Plaintiff alleges that he was placed in segregation on several occasions, it is highly doubtful that any individual period of segregation was particularly lengthy.  In any event, because he has failed to allege that his periods of segregation were either atypical or significant, Plaintiff fails to state a due-process claim against Defendants Anderson, Horka and Rose for placing him in segregation.

- 16 -

Plaintiff also alleges that he was subjected to retaliation and sent to isolation for filing written complaints and assisting others.  Plaintiff does not name which Defendants allegedly retaliated against him.  However, because Plaintiff alleges that Defendants Anderson, Horka and Rose placed him in segregation on one or more occasions, the Court will assume that Plaintiff intends to raise a retaliation claim against them.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Thaddeus-X*, 175 F.3d at 394.  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence.  *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985).  "[A]lleging merely the ultimate fact of retaliation is insufficient."  *Murphy*, 833 F.2d at 108; *see also Iqbal*, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'"  *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826

F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendants retaliated against him because he filed a grievance either on his own behalf or on behalf of another. Accordingly, his speculative allegation fails to state a claim.

### 4.     Defendant Grahm

Plaintiff makes several allegations against Defendant Grahm that arguably implicate the Eighth Amendment. First, Plaintiff alleges that Grahm refused to prescribe a particular medication that Plaintiff had previously taken. Second, Plaintiff alleges that Grahm did not see Plaintiff on one occasion on which Plaintiff asked to see the doctor. Third, he alleges that Grahm is the party responsible for authorizing a 1500-calorie-per-day diet.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious.  *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo County*, 390 F.3d 890, 899 (6th Cir. 2004).  If, however, the need involves "minor maladies or non-obvious complaints of a serious need for medical care," *Blackmore*, 390 F.3d at 898,  the inmate must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment." *Napier v. Madison County, Ky.*, 238 F.3d 739, 742 (6th Cir. 2001).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000) (citing *Farmer*, 511 U.S. at 834).  Deliberate indifference "entails something more than mere negligence," *Farmer,* 511 U.S. at 835, but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.*  Under *Farmer*, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Plaintiff's first two allegations against Grahm are wholly insufficient to state a claim.  Plaintiff fails to allege that he had a sufficiently serious medical need that would implicate the Eighth Amendment.  He does not identify what condition required the medication he requested, what medication Grahm denied, or how the failure to prescribe a certain medication created a substantial risk of serious harm.  Similarly, Plaintiff makes no allegation about why he needed to see Dr. Grahm

on the day he asked to be seen.  He does not disclose whether a serious medical need was present or whether Grahm was aware of the existence of a substantial risk of serious harm.  Plaintiff's first two Eighth Amendment claims therefore fail to state a claim.

Plaintiff next claims that Grahm authorized an inadequate diet containing only 1500 calories.  The Eighth Amendment is concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement."  *Rhodes*, 452 U.S. at 348 (citation omitted).  However, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment."  *Ivey*, 832 F.2d at 954.   Moreover, as with medical claims, a prisoner claiming unconstitutional conditions of confinement also must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to inmate health or safety."   *Mingus v. Butler*, 591 F.3d 474, 479-80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (applying deliberate indifference standard to medical claims)); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims).

By his own allegations, Plaintiff acknowledges that he has received sufficient calories from the general diet and the supplemental foods he purchased.  He does not allege that he has lost weight or that his health has been endangered in any way.  He therefore fails to demonstrate that Graham acted with deliberate indifference to a serious risk to Plaintiff's own health or safety.[1] Although Plaintiff may be unhappy with the variety of the food offered and the price of commissary

---

[1]The Court also observes that Plaintiff's claim that the jail diet consists of 1,500 calories lacks credibility as it is inconsistent with his other allegations about the contents of a typical meal.

- 20 -

food, his allegations do not show that he was subjected to unconstitutional conditions of confinement.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: _____8/5/2011_____          _____*/s/ R. Allan Edgar*_____
                                        R. Allan Edgar
                                        United States District Judge